**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA TORRES and MICHAEL LAMORIE, individually and as next friends of their minor child A. L.,<br>Plaintiffs,<br>v. | ) | Case No. |
| MEAD JOHNSON NUTRITION COMPANY; MEAD JOHNSON & COMPANY, LLC;<br><br>Defendant. | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiffs, Jessica Torres and Michael Lamorie, individually and as next friends of their minor child, A.L., by and through their attorneys of record, Jeffrey M. Goldberg and Jeffrey Schulkin of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC, and for their causes of action against Defendants, pleading hypothetically and in the alternative, state and allege as follows:

**PARTIES**

1. Plaintiffs Jessica Torres, Michael Lamorie, and their minor child A.L. currently reside in and are domiciled in Orange County, California. Plaintiffs Jessica Torres and Michael Lamorie are the natural parents of A.L., who lives with them. Plaintiffs are currently citizens of the State of California. At the time A.L. consumed the Salmonella-contaminated Enfamil and contracted Salmonella, Plaintiffs Jessica Torres, Michael Lamorie, and their minor child A.L. resided in and were domiciled in Adams County, Colorado, and were citizens of the State of Colorado.

2. At all times relevant to this action, Defendant MEAD JOHNSON NUTRITION COMPANY, was a Delaware corporation with its principal place of business located in Illinois.

The Mead Johnson Global Headquarters was at all times relevant hereto located at 225 North Canal Street, 25th Floor, Chicago, IL 60606. Mead Johnson Nutrition Company can be served at its principal place of business located at 225 North Canal Street, 25th Floor, Chicago, IL 60606 or through its registered agent at Illinois Corporation Service Company located at 801 Adlai Stevenson Dr, Springfield, IL 62703. Defendant Mead Johnson Nutrition Company manufactures, designs, formulates, prepares, tests, provides instructions, markets, labels, packages, distributes, places into the stream of commerce and directs its products into all fifty states (including Illinois, Colorado, and California), and sells infant formula products including Enfamil Gentlease.

3. At all times relevant to this action, Defendant MEAD JOHNSON & COMPANY, LLC ("Mead Johnson & Company") was a limited liability company organized under the laws of Delaware. Its citizenship is that of its sole member, Mead Johnson Nutrition Company. The Mead Johnson Global Headquarters was at all times relevant hereto located at 225 North Canal Street, 25th Floor, Chicago, IL 60606. Mead Johnson & Company can be served through its registered agent at Illinois Corporation Service Company located at 801 Adlai Stevenson Dr, Springfield, IL 62703 or through its Mead Johnson Global Headquarters is located at 225 North Canal Street, 25th Floor, Chicago, IL 60606 or at 2400 West Lloyd Expressway, Evansville, Indiana 47721. Defendant Mead Johnson & Company manufactures, designs, formulates, prepares, tests, provides instructions, markets, labels, packages, distributes, places into the stream of commerce and directs its products into all fifty states (including Illinois, Colorado, and California), and sells infant formula products including Enfamil Gentlease.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between

citizens of different states, and because Defendants have certain minimum contacts with the State of Illinois such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

5. Defendant Mead Johnson Nutrition Company is a company incorporated and organized under the laws of the State of Delaware.

6. This Court has general personal jurisdiction over Defendant Mead Johnson Nutrition Company because at all relevant times it was a citizen of Illinois, resident of Illinois, and domiciled in Illinois with its principal place of business and Mead Johnson Global Headquarters located at 225 North Canal Street, 25th Floor, Chicago, IL 60606.

7. Mead Johnson & Company is a limited liability company, organized under the laws of the State of Delaware. Mead Johnson & Company's sole member is Mead Johnson Nutrition Company. As a limited liability company, Mead Johnson & Company's citizenship is that of its sole member, Mead Johnson Nutrition Company, who at all times relevant hereto was domiciled in Illinois with its principal place of business and Mead Johnson Global Headquarters located at 225 North Canal Street, 25th Floor, Chicago, IL 60606.

8. This Court has general personal jurisdiction over Defendant Mead Johnson & Company because at all relevant times it was a citizen of Illinois, resident of Illinois, and domiciled in Illinois with its principal place of business and Mead Johnson Global Headquarters located at 225 North Canal Street, 25th Floor, Chicago, IL 60606.

9. This Court has specific personal jurisdiction over Defendants Mead Johnson Nutrition Company and Mead Johnson & Company because both committed a tort in whole or in part in Illinois. At all times relevant hereto, from the Mead Johnson Global Headquarters located at 225 North Canal Street, 25th Floor, Chicago, IL 60606, Defendants Mead Johnson Nutrition Company

and Mead Johnson & Company directed the manufacture, design, formulation, preparation, testing, providing instructions, marketing, labeling, packaging, distribution, placing into the stream of commerce and directing its infant formula products (including Enfamil Gentlease) into all fifty states (including Illinois, Colorado, and California). At all relevant times hereto, Mead Johnson Nutrition Company's and Mead Johnson & Company's negligence and failures, as outlined below in Count I: Strict Product Liability, Count II: Breach of Warranty, and Count III: Negligence, were committed in whole or in part at and/or directed from the Mead Johnson Global Headquarters located at 225 North Canal Street, 25th Floor, Chicago, IL 60606. Further, at all times relevant hereto, Mead Johnson Nutrition Company and Mead Johnson & Company marketed and sold Enfamil Gentlease in all fifty states, including Illinois, Colorado, and California.

10. Venue in the United States District Court for the Northern District of Illinois is proper pursuant to 28 USC § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes of action occurred in this judicial district,[1] and because Defendants were at all times relevant hereto subject to personal jurisdiction in this judicial district.

## INTRODUCTION

11. On or about January 12, 2019, A. L. was born in Lakewood, Colorado. His pediatrician noted that he was a healthy baby and had a normal birth. A.L. was not breastfed. For his first feeding, the hospital fed A.L. Similac formula.

12. A.L. had difficulty tolerating the Similac formula. As his siblings had prior stomach

[1] Including, without limitation, the facts that at all times relevant hereto: (1) from the Mead Johnson Global Headquarters located at 225 North Canal Street, 25th Floor, Chicago, IL 60606, Defendants Mead Johnson Nutrition Company and Mead Johnson & Company directed the manufacture, design, formulation, preparation, testing, providing instructions, marketing, labeling, packaging, distribution, placing into the stream of commerce and directing its infant formula products (including Enfamil Gentlease) into all fifty states (including Illinois, Colorado, and California); and (2) Mead Johnson Nutrition Company's and Mead Johnson & Company's negligence and failures, as outlined below in Count I: Strict Product Liability, Count II: Breach of Warranty, and Count III: Negligence, were committed in whole or in part at and/or directed from the Mead Johnson Global Headquarters located at 225 North Canal Street, 25th Floor, Chicago, IL 60606.

troubles with standard Similac formula, his mother switched him to Similac Sensitive.

13. On January 14, 2019, his pediatrician noted that A.L. "appears to be getting better" with the sensitive formula and provided his mother with a note to Colorado's WIC program for Enfamil Gentlease.

14. His mother, Jessica Torres, purchased Enfamil Gentlease for A.L. from Walmart located at 7455 W Colfax Ave, Lakewood, CO 80214, and began feeding A.L. Enfamil Gentlease.

15. On January 15, 2019, Jessica brought A.L. to the emergency room for fussiness and a diaper rash. The emergency room noted that A.L. was feeding well and was exhibiting normal infant behavior.

16. On January 23, 2019, Jessica brought A.L. back to his pediatrician with complaints of fussiness, poor PO (eating), lethargy, and whimpering. His pediatrician sent him to the emergency room for examination. While in the emergency room, physicians conducted a sepsis evaluation and ordered a stool culture. A.L. was placed on antibiotics pending the results.

17. The following day, A.L.'s labs returned, and A.L. was diagnosed with Salmonella. A.L. developed Salmonella complications including without limitation:

- Salmonella meningitis;
- Bacterial sepsis of newborn;
- Cerebral infarction;
- Intracerebral (nontraumatic) Hemorrhage of Newborn;
- Intracranial abscess and granuloma;
- Convulsions of newborn; and
- Respiratory failure of newborn.

18. Anresco Laboratories tested the Similac and Enfamil Gentlease formulas. On December

4, 2019, Anresco Laboratories concluded its testing on the Similac and Enfamil Gentlease infant formulas.

19. Anresco Laboratories' tests showed that the Enfamil Gentlease formulas tested positive for Salmonella. Anresco Laboratories' tests showed that the Similac formulas tested negative for Salmonella.

20. Plaintiffs Jessica Torres and Michael Lamorie did not learn of Anresco Laboratories' test results until after they had received Anresco Laboratories' report, sometime after December 5, 2019, when the Anresco Laboratories report and attachments thereto were printed.

21. A.L. continues to experience mental and physical complications.

22. A.L. will experience future mental and physical complications.

## CAUSES OF ACTION

### COUNT I: *Strict Product Liability*

NOW COME Plaintiffs, Jessica Torres and Michael Lamorie, individually and as next friends of their minor child, A.L., through their attorneys, Jeffrey M. Goldberg and Jeffrey Schulkin of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC complaining of Defendants, pleading hypothetically and in the alternative, state as follows:

Plaintiffs allege paragraphs 1-22 of Parties, Jurisdiction and Venue, and Introduction as paragraphs 1-22 of Count I as though fully set forth herein.

23. Defendants manufactured, designed, formulated, prepared, tested, provided instructions, marketed, labeled, packaged, distributed, placed into the stream of commerce, and sold the contaminated Enfamil Gentlease products that Plaintiffs purchased, which caused A.L. 's illness and injuries. This product will hereafter be called the "subject product."

24. Defendants regularly manufactured, designed, formulated, prepared, tested, provided

instructions, marketed, labeled, packaged, distributed, placed into the stream of commerce, and sold Enfamil Gentlease products. Defendants manufactured, designed, formulated, prepared, tested, provided instructions, marketed, labeled, packaged, distributed, placed into the stream of commerce, and sold the subject product.

25. The infant formula that Plaintiffs purchased and A.L. consumed from Defendants was contaminated with *Salmonella* and was therefore as a result, defective and unreasonably dangerous.

26. Food that is contaminated by *Salmonella* is unsafe when put to its reasonably foreseeable use considering the nature of the product. Namely, *Salmonella* contaminated food is unfit for human consumption.

27. The subject product was contaminated by *Salmonella* when it left the control of the Defendants. A.L.'s consumption of the contaminated food caused him to become infected by *Salmonella* and to suffer injuries as a direct and proximate result of that consumption.

28. Defendants are strictly liable to Plaintiffs for the harm proximately caused by the manufacturing, designing, formulation, preparation, testing, providing instructions, marketing, labeling, packaging, distribution, placing into the stream of commerce, and selling of an unsafe and defective food product.

29. WHEREFORE Plaintiffs, Jessica Torres and Michael Lamorie, individually and as next friends of their minor child, A.L., through their attorneys, Jeffrey M. Goldberg and Jeffrey Schulkin of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC, pray for judgment against the Defendants in such amount in excess of fifty thousand dollars ($50,000.00) as shall be just and proper compensation for the injuries sustained, plus costs.

**COUNT II:** ***Breach of Warranty***

NOW COME Plaintiffs, Jessica Torres and Michael Lamorie, individually and as next friends of their minor child, A.L., through their attorneys, Jeffrey M. Goldberg and Jeffrey Schulkin of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC complaining of Defendants, pleading hypothetically and in the alternative state as follows:

Plaintiffs allege paragraphs 1-29 of Parties, Jurisdiction and Venue, Introduction, and Count I as paragraphs 1-29 of Count II as though fully set forth herein.

30. By offering Enfamil Gentlease and/or other formula products for sale to the public, Defendants impliedly warranted that such products were safe to eat, that it was not adulterated with a deadly pathogen, and that the Enfamil Gentlease and/or other formula products had been safely prepared under sanitary conditions.

31. Defendants breached these implied warranties by distributing and selling the subject product, because it was contaminated by *Salmonella*. Defendants breached their implied warranty as described above in that the food that they sold, distributed and supplied was not fit for Plaintiffs' consumption.

32. Plaintiffs' injuries proximately and directly resulted from Defendants' breach of implied warranties, and Plaintiffs are thus entitled to recover for all actual, consequential, and incidental damages that flow directly and in a foreseeable fashion from these breaches.

WHEREFORE Plaintiffs, Jessica Torres and Michael Lamorie, individually and as next friends of their minor child, A.L., through their attorneys, Jeffrey M. Goldberg and Jeffrey Schulkin of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC, pray for judgment against the Defendants in such amount in excess of fifty thousand dollars ($50,000.00) as shall be just and proper compensation for the injuries sustained, plus costs.

**COUNT III: *Negligence***

NOW COME Plaintiffs, Jessica Torres and Michael Lamorie, individually and as next friends of their minor child, A.L., through their attorneys, Jeffrey M. Goldberg of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC complaining of Defendants pleading hypothetically and in the alternative state as follows:

Plaintiffs allege paragraphs 1-32 of Parties, Jurisdiction and Venue, Introduction, Count I, and Count II as paragraphs 1-32 of Count III as though fully set forth herein.

33. Defendants manufactured, designed, formulated, prepared, tested, provided instructions, marketed, labeled, packaged, distributed, placed into the stream of commerce, and sold food products, including specifically infant formula, that were contaminated with *Salmonella,* a deadly pathogen. The infant formula, as a result of contamination, was unfit for human consumption, thus defective, and were not reasonably safe as manufactured, designed, formulated, prepared, tested, provided instructions, marketed, labeled, packaged, distributed, placed into the stream of commerce, and sold.

34. Defendants owed a duty to all persons who consumed their products to manufacture, design, formulate, prepare, test, provide instructions, market, label, package, distribute, place into the stream of commerce, and sell infant formula that was safe to eat, that were not adulterated with deadly pathogens, like *Salmonella*, and that were not in violation of applicable food and safety regulations.

35. Defendants owed a duty to all persons who consumed their products a duty to maintain their premises in a sanitary and safe condition so that the infant formula they manufactured, designed, formulated, prepared, tested, provided instructions, marketed, labeled, packaged,

distributed, placed into the stream of commerce, and sold would not be contaminated with a deadly pathogen, like *Salmonella*.

36. Defendants breached the duties owed to their customers by committing the following acts and omissions of negligence:

a. Failed to prevent their infant formula from becoming contaminated with *Salmonella*;

b. Failed to adequately maintain or monitor the sanitary conditions of their products, premises, and employees;

c. Failed to properly operate their facilities in a safe, clean, and sanitary manner;

d. Failed to apply their food safety policies and procedures to ensure the safety and sanitary conditions of their food products, premises, and employees;

e. Failed to prevent the transmission of *Salmonella* to consumers of their infant formula;

f. Failed to properly train their employees and agents how to prevent the transmission of *Salmonella* on their premises, or in their food products; and

g. Failed to properly supervise their employees and agents to prevent the transmission of *Salmonella* on their premises, or in their food products.

37. Defendants had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, design, formulation, preparation, testing, providing instructions, marketing, labeling, packaging, distributing, placing into the stream of commerce, storage, and sale of their food products.

38. Defendants owed a duty to Plaintiffs to use reasonable care in the manufacture, design, formulation, preparation, testing, providing instructions, marketing, labeling, packaging, distributing, placing into the stream of commerce, storage, and sale of their food products, to prevent contamination with *Salmonella*. Defendants breached this duty.

39. Defendants had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, design, formulation, preparation, testing, providing instructions, marketing, labeling, packaging, distributing, placing into the stream of commerce, storage, and sale of the food products that injured A.L., including the applicable provisions of the Federal Food, Drug and Cosmetic Act, and similar Illinois and Colorado food and public health statutes, all of which prohibit the sale of any food that is adulterated, or otherwise injurious to health.

40. The subject product was adulterated within the meaning of the Federal Food, Drug and Cosmetic Act, and similar Illinois and Colorado statutes, because it contained a deleterious substance that rendered it injurious to health, i.e., *Salmonella* bacteria.

41. Defendants violated federal, state, and local food safety regulations by their sale of adulterated food. These federal, state, and local food safety regulations are applicable here, and establish a positive and definite standard of care in the sale of food. The violation of these regulations constitutes negligence as a matter of law.

42. A.L. is in the class of persons intended to be protected by these statutes and regulations, and A.L. was injured as the direct and proximate result of Defendants' violation of applicable federal, state, and local food safety regulations.

43. Defendants were negligent in the manufacture, design, formulation, preparation, testing, providing instructions, marketing, labeling, packaging, distributing, placing into the stream of commerce, storage, and sale of a food product that was adulterated with *Salmonella*, not fit for human consumption, and not reasonably safe because adequate warnings or instructions were not provided.

44. Defendants had a duty to manufacture, design, formulation, preparation, testing, providing instructions, marketing, labeling, packaging, distributing, placing into the stream of commerce,

storage, and sale food products that were wholesome, free from adulteration and fit for human consumption, but failed to do so, and therefore breached that duty.

45. Defendants' various acts and omissions of negligence proximately caused A.L.'s *Salmonella* infection and related illness, complications, injuries, and damages.

46. A.L. 's injuries proximately and directly resulted from the negligence of Defendants, and from Defendants' violations of statutes, laws, regulations, and safety codes pertaining to the manufacture, distribution, storage, and sale of food.

WHEREFORE Plaintiffs, Jessica Torres and Michael Lamorie, individually and as next friends of their minor child, A.L., through their attorneys, Jeffrey M. Goldberg and Jeffrey Schulkin of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC, pray for judgment against the Defendants in such amount in excess of fifty thousand dollars ($50,000.00) as shall be just and proper compensation for the injuries sustained, plus costs.

**COUNT IV: *Negligence Per Se***

NOW COME Plaintiffs, Jessica Torres and Michael Lamorie, individually, through their attorneys, Jeffrey M. Goldberg and Jeffrey Schulkin of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC complaining of Defendants pleading hypothetically and in the alternative, state as follows:

Plaintiffs allege paragraphs 1-46 of Parties, Jurisdiction and Venue, Introduction, Count I, - Count III as paragraphs 1-46 of Count IV as though fully set forth herein.

47. Defendants had a duty to comply with all applicable local, state, and federal regulations intended to ensure the purity and safety of their food product, including, but not limited to, the requirements of the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 *et seq*.

48. Defendants failed to comply with the provisions of the health and safety acts identified

above, and, as a result, was negligent per se in their manufacture, design, formulation, preparation, testing, providing instructions, marketing, labeling, packaging, distributing, placing into the stream of commerce, storage, and sale of food adulterated with *Salmonella*, a deadly pathogen.

49. As a direct and proximate result of conduct by the Defendants that was negligent per se, A.L. sustained injuries and damages.

**COUNT V: *Parent's Right to Reimbursement—Strict Liability***

NOW COME Plaintiffs, Jessica Torres and Michael Lamorie, individually, through their attorneys, Jeffrey M. Goldberg and Jeffrey Schulkin of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC complaining of Defendants pleading hypothetically and in the alternative, state as follows:

Plaintiffs allege paragraphs 1-49 of Parties, Jurisdiction and Venue, Introduction, Count I - Count IV as paragraphs 1-49 of Count V, as though fully set forth herein.

50. As the direct and proximate result of Defendant's acts and omissions, Plaintiffs suffered ordinary, incidental, and consequential damages as would be anticipated to arise under the circumstances, which shall be fully proven at the time of trial.

51. Illinois Law entitles parents to file a cause of action to recover reimbursement for expenses they incur that relate to an injured minor child, including medical expenses.

52. Plaintiffs incurred multiple medical, therapeutic, medicinal, laboratory, and related expenses due to the necessary testing, diagnosis and treatment for the minor child A.L.'s *Salmonella* infection, including medical bills, lost wages and additional expenses.

53. Illinois Law entitles parents to file a cause of action to recover reimbursement for expenses they incur that relate to an injured minor child, including medical expenses, as governed by the Illinois Family Expense Act 750 ILCS 65115 [See *Dewey v. Zack*, 272 Ill.App.3d 742, 746, 651

N.E.2d 643 (2nd Dist. 1995]).

WHEREFORE, Plaintiffs Jessica Torres and Michael Lamorie, individually, pray for judgment against Defendants in such an amount as shall be just and proper to compensate for the medical, therapeutic, and related expenses incurred to date and to be incurred until their minor child A.L. reaches the age of 18, plus costs.

**COUNT VI: *Parent's Right to Reimbursement—Breach of Warranty***

NOW COME Plaintiffs, Jessica Torres and Michael Lamorie, individually, through their attorneys, Jeffrey M. Goldberg and Jeffrey Schulkin of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC complaining of Defendants pleading hypothetically and in the alternative, state as follows:

Plaintiffs allege paragraphs 1-52 of Parties, Jurisdiction and Venue, Introduction, Count I - Count V, Count III as paragraphs 1-52 of Count VI, as though fully set forth herein.

54. As the direct and proximate result of Defendant's acts and omissions, Plaintiffs suffered ordinary, incidental, and consequential damages as would be anticipated to arise under the circumstances, which shall be fully proven at the time of trial.

55. Illinois Law entitles parents to file a cause of action to recover reimbursement for expenses they incur that relate to an injured minor child, including medical expenses.

56. Plaintiffs incurred multiple medical, therapeutic, medicinal, laboratory, and related expenses due to the necessary testing, diagnosis and treatment for the minor child A.L.'s *Salmonella* infection, including medical bills, lost wages and additional expenses.

57. Illinois Law entitles parents to file a cause of action to recover reimbursement for expenses they incur that relate to an injured minor child, including medical expenses, as governed by the Illinois Family Expense Act 750 ILCS 65115 [See *Dewey v. Zack*, 272 Ill.App.3d 742, 746, 651

N.E.2d 643 (2nd Dist. 1995]).

WHEREFORE, Plaintiffs Jessica Torres and Michael Lamorie, individually, pray for judgment against Defendants in such an amount as shall be just and proper to compensate for the medical, therapeutic, and related expenses incurred to date and to be incurred until their minor child A.L. reaches the age of 18, plus costs.

**COUNT VII:** ***Parent's Right to Reimbursement—Negligence***

NOW COME Plaintiffs, Jessica Torres and Michael Lamorie, individually, through their attorneys, Jeffrey M. Goldberg and Jeffrey Schulkin of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC complaining of Defendants pleading hypothetically and in the alternative, state as follows:

Plaintiffs allege paragraphs 1-57 of Counts I – VI as paragraphs 1-57 of Count VII, as though fully set forth herein.

58. As the direct and proximate result of Defendant's acts and omissions, Plaintiffs suffered ordinary, incidental, and consequential damages as would be anticipated to arise under the circumstances, which shall be fully proven at the time of trial.

59. Illinois Law entitles parents to file a cause of action to recover reimbursement for expenses they incur that relate to an injured minor child, including medical expenses.

60. Plaintiffs incurred multiple medical, therapeutic, medicinal, laboratory, and related expenses due to the necessary testing, diagnosis and treatment for the minor child A.L.'s *Salmonella* infection, including medical bills, lost wages and additional expenses.

61. Illinois Law entitles parents to file a cause of action to recover reimbursement for expenses they incur that relate to an injured minor child, including medical expenses, as governed by the Illinois Family Expense Act 750 ILCS 65115 [See *Dewey v. Zack*, 272 Ill.App.3d 742, 746, 651

N.E.2d 643 (2nd Dist. 1995]).

WHEREFORE, Plaintiffs Jessica Torres and Michael Lamorie, individually, pray for judgment against Defendants in such an amount as shall be just and proper to compensate for the medical, therapeutic, and related expenses incurred to date and to be incurred until their minor child A.L. reaches the age of 18, plus costs.

**COUNT VIII: *Parent's Right to Reimbursement—Negligence Per Se***

NOW COME Plaintiffs, Jessica Torres and Michael Lamorie, individually, through their attorneys, Jeffrey M. Goldberg and Jeffrey Schulkin of Goldberg & Schulkin Law Offices and Jory D. Lange, Jr. of The Lange Law Firm, PLLC complaining of Defendants pleading hypothetically and in the alternative, state as follows:

Plaintiffs allege paragraphs 1-61 of Counts I – VII as paragraphs 1-61 of Count VIII, as though fully set forth herein.

62. As the direct and proximate result of Defendant's acts and omissions, Plaintiffs suffered ordinary, incidental, and consequential damages as would be anticipated to arise under the circumstances, which shall be fully proven at the time of trial.

63. Illinois Law entitles parents to file a cause of action to recover reimbursement for expenses they incur that relate to an injured minor child, including medical expenses.

64. Plaintiffs incurred multiple medical, therapeutic, medicinal, laboratory, and related expenses due to the necessary testing, diagnosis and treatment for the minor child A.L.'s *Salmonella* infection, including medical bills, lost wages and additional expenses.

65. Illinois Law entitles parents to file a cause of action to recover reimbursement for expenses they incur that relate to an injured minor child, including medical expenses, as governed by the Illinois Family Expense Act 750 ILCS 65115 [See *Dewey v. Zack*, 272 Ill.App.3d 742, 746, 651

N.E.2d 643 (2nd Dist. 1995]).

WHEREFORE, Plaintiffs Jessica Torres and Michael Lamorie, individually, pray for judgment against Defendants in such an amount as shall be just and proper to compensate for the medical, therapeutic, and related expenses incurred to date and to be incurred until their minor child A.L. reaches the age of 18, plus costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray as follows:

1. That the Court award Plaintiffs judgment against Defendants for damages.
2. That the Court award all such other sums as shall be determined to fully and fairly compensate Plaintiffs for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiffs as the direct and proximate result of the acts and omissions of Defendants;
3. That the Court award Plaintiffs their costs, disbursements and reasonable attorneys' fees incurred;
4. That the Court award Plaintiffs the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and
5. That the Court award such other and further relief as it deems necessary and proper in the circumstances.

**JURY TRIAL DEMAND**

Plaintiffs demand trial by jury on all issues raised herein.

Dated: December 1, 2021.

Respectfully submitted,

By: */s/ Jeffrey M. Goldberg*

Jeffrey M. Goldberg, ARDC # 0984086
Jeffrey A. Schulkin, ARDC # 6230220
GOLDBERG & SCHULKIN LAW OFFICES
180 N. Stetson Avenue, Suite 1975
Chicago, IL 60601
Telephone: (312) 236-4146
Facsimile: (312) 236-5913
www.GoldbergLaw.com

Jory D. Lange, Jr., TX Bar # 24041294
THE LANGE LAW FIRM PLLC
6300 West Loop South, Suite 350
Houston, TX 77401
Telephone: (833) 330-3663
Email: jory@jorylange.com
www.MakeFoodSafe.com

**ATTORNEYS FOR PLAINTIFFS**